Raymond S. Sant, Esq. County Attorney, Cayuga
You have asked whether the director of a county laboratory may also serve as coroner for the county. You have informed us by telephone that the coroner's forensic lab work is currently being done by the county laboratory at no charge.
In the absence of a constitutional or statutory prohibition against dual-officeholding, one person may hold two offices simultaneously unless they are incompatible. The leading case on compatibility of office isPeople ex rel. Ryan v Green, 58 N.Y. 295 (1874). In that case the Court held that two offices are incompatible if one is subordinate to the other or if there is an inherent inconsistency between the two offices. The former can be characterized as "you cannot be your own boss", a status normally easy to see. The latter is not easily characterized, for one must analyze the duties of the two offices to ascertain whether there is an inconsistency. An obvious example is the inconsistency of holding both the office of auditor and the office of director of finance.
There are two subsidiary aspects of compatibility. One is that, although the common law rule of the Ryan case is limited to public offices, the principle equally covers an office and a position of employment or two positions of employment. The other is that, although the positions are compatible, a situation may arise where one has a conflict of interest created by the simultaneous holding of the two positions. In such a situation the conflict is avoided by declining to participate in the disposition of the matter. If such situations are inevitable as opposed to being possibilities, there is an inherent inconsistency in the positions.
County laboratories may be established by the county board to "serve the whole or part of the county" pursuant to article 5, title 2 of the Public Health Law (§§ 520-528). The county board appoints a board of managers who supervises the operation of the laboratory and its provision of medical laboratory services (id., §§ 523, 525). The board of managers also appoints a director who manages the day-to-day operation of the laboratory; makes and enforces rules and regulations as to the laboratory's operation; and keeps and certifies all the accounts and records of the laboratory (id., §§ 527, 528).
A coroner has jurisdiction and authority to investigate the death of every person dying within his territorial jurisdiction which is or appears to be:
 "(a) A violent death whether by criminal violence, suicide or casualty;
 (b) A death caused by unlawful act or criminal neglect;
 (c) A death occurring in a suspicious, unusual or unexplained manner;
(d) A death caused by suspected criminal abortion;
 (e) A death while unattended by a physician . . . or where no physician [is] able to certify the cause of death . . .;
 (f) A death of a person confined in a public institution other than a hospital, infirmary or nursing home" (County Law, § 673[1]).
When a coroner is informed of the occurrence of a death within his jurisdiction, he is required to "go at once to the place where the body is and take charge of it" (County Law, § 674[1]). In the course of the investigation, the coroner is authorized to perform an autopsy and any other forensic examination or analysis that is deemed to be necessary (County Law, § 674[3][a]).
Section 675 of the County Law also authorizes the coroner "to consult with and to request advice, consultation or other assistance" from any public official or physician qualified to make post mortem examinations (id., § 675[1]). This includes the authority to request "tests, examinations or analyses and reports" from these individuals (ibid.).
In our view, no conflict exists between the duties of coroner and county laboratory director. No financial impropriety exists, inasmuch as the services of the laboratory are provided to the coroner's office at no charge. This is consistent with the Public Health Law which allows a county to provide certain services free of charge (Public Health Law, § 520[3]). Furthermore, service of the coroner as the lab director does not impair the objectivity of the forensic examinations performed by the county lab on behalf of the coroner. Under the County Law, the coroner's office is authorized to perform these tests itself. Indeed, it is our understanding that in the more metropolitan counties many forensic exams are performed "in-house" by the coroner's office. It follows that if the coroner can perform these tests by him or herself, the tests may also be performed by another agency of the county government which is also headed by the coroner.
We conclude that a coroner may serve as the director of a county health laboratory.